FILED

JUNE 2 2023

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HILDE VAN DER WESTHUIZEN,<br>　　　　　　Debtor. | BAP No. CC-22-1133-CLS<br><br>Bk. No. 8:21-bk-11311-TA |
| HILDE VAN DER WESTHUIZEN,<br>　　　　　　Appellant,<br>v.<br>ANASTASIA SKY, MD,<br>　　　　　　Appellee. | Adv. No. 8:21-ap-01059-TA<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Theodor C. Albert, Bankruptcy Judge, Presiding

Before: CORBIT, LAFFERTY, and SPRAKER, Bankruptcy Judges.

Memorandum by Judge Corbit.
Concurrence by Judge Lafferty.

## INTRODUCTION

Appellant and debtor Hilde Van Der Westhuizen appeals the

bankruptcy court's order granting appellee Anastasia Sky's motion for

summary judgment. Prior to Van Der Westhuizen's bankruptcy filing, Sky

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

obtained a judgment against her in Ohio for a variety of intentional torts.

Sky sought to except the judgment debt from discharge pursuant to

§ 523(a)(6).[1] Because the bankruptcy court erred in applying the Ohio

doctrine of issue preclusion, summary judgment was not appropriate. We

REVERSE and REMAND.

**FACTS**

**A.     History**

**1.      Birman cats**

Van Der Westhuizen and Sky have been involved in the breeding and

showing of Birman cats for almost two decades. They met in 2013 and

became friends through their mutual involvement in, and attendance at,

Birman cat shows. Van Der Westhuizen and Sky each owned award-

winning cats. During the 2015-16 cat show season, Van Der Westhuizen

and Sky each had a cat competing for the International Best of Breed

Champion Award and Van Der Westhuizen's cat ultimately won. While

the specifics are not clear, it appears that the friendship between Sky and

Van Der Westhuizen deteriorated as a result of competitiveness and an

alleged breach of a breeding contract.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, all "Civil Rule" references are to the Federal Rules of Civil Procedure, and all "FRE" references are to the Federal Rules of Evidence.

### 2.    Negative emails and reviews

According to Sky, in March 2016, Van Der Westhuizen began a campaign of discrediting and disparaging Sky through a series of emails and online reviews containing derogatory and untrue statements about Sky's cat breeding business and her medical practice. The first emails appeared to have been sent from one of Sky's former employees. However, it was later discovered that the emails were sent from a fabricated email address by someone posing as the former employee. Similar emails about Sky were sent to the Cat Fanciers' Association ("CFA"), to the Breeder Assistance and Breeder Rescue Program, to CFA judges, and to fellow breeders. Sky believed that Van Der Westhuizen sent the emails and also posed as a former medical patient who posted negative reviews of Sky's medical practice on RateMDs.com. None of the emails originated from Van Der Westhuizen's email account. Rather, all emails originated from fabricated email addresses and aliases.

### B.    Ohio trial court action

On July 21, 2016, Sky filed a complaint in the Stark County Ohio Court of Common Pleas ("Ohio trial court") against an unnamed defendant. At the time of filing the complaint, Sky was a resident of Ontario, Canada and Van Der Westhuizen resided in Minnesota. It appears that Sky filed the complaint in Ohio because CFA's central office is in Ohio and both Sky and Van Der Westhuizen had cats registered with CFA and participated in cat shows sponsored by CFA.

3

1. **The amended complaint named Van Der Westhuizen.**

In October 2016, Sky filed an amended complaint naming Van Der Westhuizen as the defendant. The amended complaint included six causes of action: (1) defamation per se; (2) defamation; (3) tortious interference with existing economic and/or business relationship, (4) tortious interference with prospective economic and/or business relationships; (5) violation of the Ohio Deceptive Trade Practices Act; and (6) intentional infliction of emotional distress. Sky sought presumed, economic, special, compensatory, and punitive damages in addition to attorneys' fees and costs.

2. **Service of the amended complaint**

Sky served the amended complaint on Van Der Westhuizen on January 20, 2017, by regular mail. Van Der Westhuizen later alleged that she did not receive service because she was in a different state with her family. Van Der Westhuizen's attorney filed a notice of appearance with the Ohio trial court on March 8, 2017.

3. **Default judgment**

On March 9, 2017, Sky moved for a default judgment. Although Van Der Westhuizen did not file an answer to the amended complaint, she filed a brief in opposition to Sky's motion for default followed by a motion for leave to file a motion to dismiss the amended complaint based on a lack of personal jurisdiction.

4

On March 29, 2017, the Ohio trial court entered a default judgment against Van Der Westhuizen. Concurrently, the Ohio trial court dismissed as moot Van Der Westhuizen's motion to dismiss the complaint for lack of personal jurisdiction and set a hearing date to determine damages.

Van Der Westhuizen filed a motion to vacate or set aside the default judgment which the Ohio trial court denied. Van Der Westhuizen attempted to appeal the denial order, but the Ohio Court of Appeals found it was an interlocutory judgment and therefore not yet appealable.

### 4.    Hearings on damages

The Ohio trial court held several hearings on the issue of damages. Based on Ohio law regarding default judgments, Van Der Westhuizen was deemed to have admitted all well-pleaded allegations in the amended complaint. Accordingly, the damages hearings focused on Sky's damages resulting from the negative emails and reviews.

At the damages hearings, Sky and other witnesses testified as to her mental, physical, and emotional state before, during, and after she found out about the negative emails and reviews. Sky's attorney testified about the attorneys' fees she incurred in challenging the false information and pursuing claims against Van Der Westhuizen. Van Der Westhuizen denied sending any of the emails or writing any of the negative reviews. Van Der Westhuizen also testified and presented evidence and witnesses to contest the extent of damages Sky suffered.

At the conclusion of the damages hearings, the Ohio trial court entered 67 pages of findings of fact and conclusions of law and an award of damages ("Ohio Findings and Conclusions"). In total, the Ohio trial court awarded Sky $302,722.56 in damages and fees.

The first page of the Ohio Findings and Conclusions specifically noted that "liability [was] not at issue [because Van Der Westhuizen] has already been deemed liable for the acts and other allegations as set forth in the First Amended Complaint."

## C.    Appeal to the Ohio State Court of Appeals

Van Der Westhuizen appealed the Ohio trial court's judgment. She did not raise, however, whether the trial court failed to give her an adequate opportunity to actually and directly contest liability. Rather, Van Der Westhuizen only appealed issues related to jurisdiction and the amount of damages and fees awarded.[2]

The Ohio Court of Appeals affirmed the judgment. As to the default judgment and presumed liability, the court of appeals found that Van Der

---

[2] Van Der Westhuizen asserted seven assignments of error: (1) the trial court erred in denying relief to appellant from the default judgment because it lacked personal jurisdiction; (2) the trial court's evidentiary findings in support of its award of compensatory damages were against the manifest weight of the evidence; (3) the trial court's evidentiary findings in support of its award of attorney's fees were against the manifest weight of the evidence; (4) the trial court abused its discretion in awarding the Canadian firms' fees; (5) the trial court abused its discretion in awarding punitive damages; (6) the trial court abused its discretion in awarding damages under the Ohio deceptive trade practices act; and (7) the trial court abused its discretion in awarding injunctive relief.

Westhuizen's liability was established by the default judgment. According to the court of appeals, because a "default judgment was entered on [Sky's] amended complaint [the default] result[ed] in an admission by [Van Der Westhuizen] that her actions were malicious, reckless, wanton, willful and gross and were characterized by hatred, ill will, a spirit of revenge, or a conscious disregard for the rights of [Sky]." However, the court of appeals also found that:

> in addition to the admission through default, the trial court heard testimony and was provided evidence which established Appellant acted with malice in this case. The nature of the defamatory statements contained in the e-mails, the recipients such e-mails were directed to, and the timing of same happening during the spring of 2016 when Appellant and Appellee were both aggressively pursuing the highest CFA award, all support a finding of actual malice and support an award of punitive damages.

*Sky v. Van Der Westhuizen*, 136 N.E.3d 820, 835 (Ohio Ct. App. 2019).

In 2019, after Van Der Westhuizen moved to California, Sky registered the Ohio judgment as a foreign judgment with the Superior Court of California, County of Riverside.

## D. Van Der Westhuizen's chapter 7 bankruptcy case and Sky's adversary proceeding

On May 21, 2021, Van Der Westhuizen filed a chapter 7 bankruptcy petition. Van Der Westhuizen listed the Ohio judgment as a disputed business debt. Sky filed a complaint seeking determination of the nondischargeability of the Ohio judgment debt pursuant to § 523(a)(2)(a)

(false pretenses, false representation, or actual fraud) and § 523(a)(6)

(willful and malicious injury).

### 1. Sky's motion for summary judgment

Sky moved for summary judgment on her § 523(a)(6) claim. Her

summary judgment motion relied on the factual findings from the Ohio

Findings and Conclusions. Sky pointed out that the Ohio Findings and

Conclusions specifically provided that Van Der Westhuizen's actions were

willful and committed with actual malice. Sky argued that no genuine

issue of material fact existed because Van Der Westhuizen was precluded

from relitigating or disputing the facts previously decided by the Ohio trial

court as detailed in the Ohio Findings and Conclusions.

Sky further argued that issue preclusion applied to the Ohio Findings

and Conclusions despite the default judgment on liability because the Ohio

trial court based its ruling on the testimony and evidence presented at the

damages hearings, at which Van Der Westhuizen fully participated.

Therefore, according to Sky, the willfulness and the maliciousness of Van

Der Westhuizen's actions were actually and directly litigated by the parties

and ruled upon by the Ohio trial court. Accordingly, Sky asserted that she

had met her burden and was entitled to summary judgment as a matter of

law and that the damages awarded to her should be excepted from

discharge under § 523(a)(6).[3]

---

[3] In support of her summary judgment motion, Sky attached copies of the (1)
Ohio Findings and Conclusions, (2) Ohio trial court docket report, (3) Ohio Court of

8

### 2. Van Der Westhuizen's opposition

Van Der Westhuizen opposed Sky's motion, arguing that summary judgment was not appropriate because disputed facts remained. Van Der Westhuizen also briefly argued that preclusion did not apply because her liability was presumed as a result of the default judgment and the willfulness and maliciousness of her actions was never "actually and directly litigated" (a requirement under the Ohio preclusion framework). Her declaration submitted in opposition to summary judgment denied in a cursory manner any involvement in sending the defamatory emails or posting any of the offending medical reviews. Finally, she continued to argue that the underlying judgment was void for lack of personal jurisdiction.[4]

### 3. The bankruptcy court's tentative ruling

Prior to the hearing on Sky's summary judgment motion, the bankruptcy court issued a tentative ruling that incorporated by reference the Ohio Findings and Conclusions and made additional findings.

First, the bankruptcy court tentatively determined that it was undisputed that the Ohio trial court found that Van Der Westhuizen committed intentional torts against Sky that included defamation per se,

---

Appeals Fifth Appellate District's opinion, and (4) the California superior court notice of entry of judgment on Sister-State judgment (the Ohio judgment).

[4] Van Der Westhuizen devoted most of her opposition to attempting to discredit Sky's exhibits (such as the Ohio Findings and Conclusions) because Sky failed to verify the documents or specifically request the court take judicial notice.

violations of the Ohio Deceptive Trade Practices Act, and intentional infliction of emotional distress. Second, the bankruptcy court tentatively decided that it was undisputed that the damages awarded to Sky were based on Van Der Westhuizen's intentional torts.

Third, the bankruptcy court tentatively ruled that Van Der Westhuizen fully participated in the proceedings before the Ohio courts despite the default judgment. In support, the bankruptcy court recounted Van Der Westhuizen's unsuccessful actions opposing the default judgment and her appeal of the damages award, positing that the procedural history of the case "demonstrates the vigor with which [Van Der Westhuizen] litigated these claims."

Fourth, based on its tentative finding that Van Der Westhuizen fully participated in the action before the Ohio trial court, the bankruptcy court tentatively decided that issue preclusion applied to the Ohio Findings and Conclusions despite the default judgment. The tentative ruling explained that the Ohio trial court's extensive findings and conclusions satisfied the Ohio preclusion requirement for an express adjudication on the merits.

Fifth, the bankruptcy court concluded that issue preclusion applied and that Van Der Westhuizen's actions were both willful and malicious within the meaning of § 523(a)(6). In support, the bankruptcy court cited to portions of the Ohio Findings and Conclusions wherein the Ohio trial court specifically found that Van Der Westhuizen's actions were willful and malicious.

10

Finally, the bankruptcy court briefly acknowledged but rejected Van Der Westhuizen's denials as to being the wrong-doer, stating, "Defendant half-heartedly attempts to cast doubt on who committed the defamatory misconduct in a vain effort to create a triable issue of material fact. But Defendant's efforts likely run afoul of the summary judgment standards above, and in particular the rule articulated in FRCP 56(e), that general denials by themselves will not create a triable issue of fact and preclude summary judgment."

### 4.    Sky's motion for summary judgment is granted

At the summary judgment hearing, Van Der Westhuizen argued that she did not send the negative emails or upload the negative reviews and that she did not get a fair shot at litigating that issue. Although Van Der Westhuizen agreed she had the opportunity to contest damages, she argued that contesting damages did not equate to having the opportunity to contest her liability as to whether she was the person who committed the acts alleged by Sky.

According to Van Der Westhuizen, during the damages hearings, "she wasn't allowed to utter a denial. That was already precluded." Van Der Westhuizen asked the bankruptcy court to give her her "day in court," even if ultimately the bankruptcy court didn't believe her. Van Der Westhuizen argued that issue preclusion should not be used to the exclusion of "equity and fair play and giving a debtor a fresh start."

The bankruptcy court rejected Van Der Westhuizen's claim that she was prevented from litigating liability on the merits, believing instead that Van Der Westhuizen simply wanted another chance to litigate the same issue. The bankruptcy court adopted its tentative ruling and granted Sky's motion for summary judgment.[5]

Van Der Westhuizen timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.[6]

## ISSUE

Did the bankruptcy court err in granting summary judgment to Sky on her § 523(a)(6) claim based on the issue preclusive effect of the Ohio Findings and Conclusions?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's summary judgment rulings and its determination to except a debt from discharge. *Ilko v. Cal. St. Bd. of Equalization* (*In re Ilko*), 651 F.3d 1049, 1052 (9th Cir. 2011). We also

---

[5] The Panel presumes that the bankruptcy court adopted its tentative ruling despite no formal statement of adoption because in its order granting Sky's motion for summary judgment, the bankruptcy court stated that it "issued its ruling granting summary judgment in favor of Plaintiff on June 9, 2022" which was the date of the tentative ruling.

[6] Although the bankruptcy court's order did not dispose of all the claims in the adversary proceeding, the bankruptcy court later issued a Civil Rule 54(b) certification and a final judgment.

review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emerg. Serv. Restoration, Inc.* (*In re Lopez*), 367 B.R. 99, 103 (9th Cir. BAP 2007).

If we determine that issue preclusion is available, we then review for an abuse of discretion the bankruptcy court's decision to apply it. *In re Lopez*, 367 B.R. at 103. A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

### A.   Legal standards for summary judgment and issue preclusion

#### 1.      Summary judgment standards

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civil Rule 56(a) (incorporated by Rule 7056); *Roussos v. Michaelides* (*In re Roussos*), 251 B.R. 86, 91 (9th Cir. BAP 2000), *aff'd*, 33 F. App'x 365 (9th Cir. 2002). Where the moving party has the burden of proof at trial, as Sky did here, the movant must affirmatively demonstrate that no reasonable trier of fact could find for the defendant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The movant must also establish beyond controversy every essential element of each claim. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). In reviewing a motion for summary judgment, all

inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). If a moving party fails to carry her burden, then the movant is not entitled to judgment and the non-moving party has no obligation to produce anything. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970).

### 2.    Ohio issue preclusion standards

Issue preclusion applies in nondischargeability proceedings to preclude relitigation of state court findings relevant to exceptions to discharge. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Bankruptcy courts may apply the doctrine to an existing state court judgment as the basis for granting summary judgment. *See Khaligh v. Hadaegh* (*In re Khaligh*), 338 B.R. 817, 832 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Issue preclusion in nondischargeability proceedings is governed by the preclusion law of the state in which the judgment was issued, which in this case is Ohio. *Harmon v. Kobrin* (*In re Harmon*), 250 F.3d 1240, 1245 (9th Cir. 2001).

In Ohio, a party asserting issue preclusion must establish the following four elements by a preponderance of the evidence:

> 1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior

suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. BAP 2002) (quoting *Hinze v. Robinson* (*In re Robinson*), 242 B.R. 380, 385 (Bankr. N.D. Ohio 1999)).

**B.      Application of Ohio issue preclusion law**

Issues determined by a default judgment generally do not meet the "actually and directly litigated" requirement for issue preclusion under Ohio law. This is because deciding an issue on the merits requires the moving party affirmatively prove each element of the claims alleged. Under Ohio law, however, "a default judgment **obviates** the plaintiff's burden to prove the elements of the claim alleged." *In re Sweeney*, 276 B.R. at 193 (emphasis added) (quoting *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Ass'n*, 502 N.E.2d 599, 603 (Ohio 1986)). In *Sweeney*, the Sixth Circuit BAP provided guidance for courts when determining whether a default judgment satisfied the second requirement of Ohio issue preclusion law (actually and directly litigated).

Sweeney was a home construction contractor. Before filing his bankruptcy petition, he was sued by a couple to whom he had sold a building lot on which he subsequently built a home for them. Their suit alleged fraud and other causes of action. Sweeney defaulted in the state court action, though he later argued that he "was completely ignorant of the [state court] litigation" until after the default judgment was entered. *In*

15

*re Sweeney*, 276 B.R. at 189-90. At a hearing on the default judgment, the plaintiffs and three witnesses on behalf of the plaintiffs testified. At the close of the hearing, the Ohio trial court awarded plaintiffs judgment against Sweeney "in the sum of $197,000, $100,000 of which was for punitive damages[.]" *Id.* at 189. The Ohio trial court did not make a finding of fraud, but it did state that "[b]ased upon the evidence the court is satisfied that judgment should be rendered in favor of the plaintiffs." *Id.* The trial court then "listed the damages count by count of the complaint without reciting any findings of fact or conclusions of law." *Id.*

After entry of judgment against him, Sweeney filed for bankruptcy protection. The state court judgment holders objected to Sweeney discharging the judgment debt. The judgment holders moved for summary judgment, relying on the state court decision and arguing that issue preclusion applied because the state court had already determined that Sweeney was guilty of fraud. Therefore, the judgment debt was not dischargeable pursuant to § 523(a)(2)(A). The bankruptcy court agreed and granted summary judgment.

On appeal, the *Sweeney* panel reversed, finding that the bankruptcy court erred in "reasoning backwards from the damage award to what [the Ohio trial court] 'must' have . . . found in order to justify [the damages awarded]." 276 B.R. at 194-95. According to the *Sweeney* panel, absent specific findings, the state trial court's award of punitive damages in connection with a default judgment did not allow the bankruptcy court to

16

infer that fraud or other misconduct justifying punitive damages was "actually litigated." *Id.* Accordingly, the panel reversed and remanded.

Thus, the *Sweeney* panel cautioned reviewing courts from presuming the merits of a claim in an underlying action were actually and directly litigated based solely on language in a judgment. *Sweeney's* guidance continues to be good law[7] and the ensuing guidance for bankruptcy courts to use when determining if an issue was actually and directly litigated despite an Ohio default judgment was developed from *Sweeney* and its progeny.

First, when deciding whether to apply issue preclusion to an Ohio default judgment, the bankruptcy court should look at the entire record of the state proceeding, not just the judgment. *See In re Sweeney,* 276 B.R. at 192-95 (reviewing record and evidence); *Miller v. Grimsley (In re Grimsley),* 449 B.R. 602, 615 (Bankr. S.D. Ohio 2011) ("Where, in the interest of justice, it is essential for a reviewing court to ascertain the grounds upon which a judgment of a lower court is founded, the reviewing court must examine the entire . . . proceedings.") (quotation marks and citation omitted); *Duley v. Thompson (In re Thompson),* 528 B.R. 721, 742 (Bankr. S.D. Ohio 2015).

Next, the bankruptcy court must determine whether the trial court made an "express adjudication" of the merits of the claim such that the

---

[7] No subsequent Ohio Supreme Court nor Sixth Circuit case has provided contrary or additional guidance on the issue. *Stratford v. Fontanez (In re Fontanez),* No. 20-13764, 2021 WL 813536, at *4 (Bankr. N.D. Ohio Mar. 1, 2021).

"court being asked to give preclusive effect to a default judgment in a subsequent litigation [has] some reliable way of knowing that the decision was made on the merits." *In re Sweeney*, 276 B.R. at 194; *see also Yust v. Henkel* (*In re Henkel*), 490 B.R. 759, 777 (Bankr. S.D. Ohio 2013). According to *Sweeney*, one way a state court demonstrates that the relevant claim was determined on the merits is by "mak[ing] findings of fact and conclusions of law which are sufficiently detailed to support the application of [issue preclusion] . . . in the subsequent proceeding." *In re Sweeney*, 276 B.R. at 193.

Finally, the bankruptcy court must determine whether the state court decided the merits of the claim based on admissible evidence submitted **apart** from and in **addition to**, the pleadings and self-serving testimony. *In re Sweeney*, 276 B.R. at 193-94; *Launder v. Doll* (*In re Doll*), 585 B.R. 446, 458-59 (Bankr. N.D. Ohio 2018). In other words, the default judgment must be based on more than the complaint because a "plaintiff's complaint, standing alone, can never provide a sufficient basis for the application of [issue preclusion]." *In re Robinson*, 242 B.R. at 387.

## C. Exception to discharge under § 523(a)(6)

Section 523(a)(6) excepts from discharge debts arising from willful and malicious injuries to an entity or its property. *Ormsby v. First Am. Title Co. of Nev.* (*In re Ormsby*), 591 F.3d 1199, 1206 (9th Cir. 2010). Whether a particular debt results from willful and malicious injury by the debtor to another, requires the creditor to prove that the debtor's conduct in causing

18

the injuries was both willful and malicious. *Barboza v. New Form, Inc.* (*In re Barboza*), 545 F.3d 702, 711 (9th Cir. 2008) (requiring the application of a separate analysis for each prong of "willful" and "malicious").

"A willful injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 706 (quotation marks and citation omitted). "Section 523(a)(6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1142 (9th Cir.2002). "A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1209 (9th Cir. 2001) (citations omitted).

**D.    The bankruptcy court erred in granting Sky's motion for summary judgment.**

As the moving party for summary judgment, it was Sky's burden to show the absence of a genuine issue as to any material fact necessary to her § 523(a)(6) claim. Because her motion rested solely on issue preclusion based on the Ohio Findings and Conclusions, Sky was entitled to judgment as a matter of law only if she affirmatively demonstrated that the Ohio Findings and Conclusions satisfied all elements of Ohio's issue preclusion doctrine.

19

On appeal, Van Der Westhuizen argues that the bankruptcy court erred in granting summary judgment because Sky failed to establish two of the four elements required by Ohio's doctrine of issue preclusion—full and fair opportunity to litigate and actually and directly litigated—thus leaving issues of material fact to be resolved.

### 1.    Van Der Westhuizen had a full and fair opportunity to litigate.

Van Der Westhuizen first argues that she did not have a full and fair opportunity to litigate her liability because she was never properly served with the amended complaint. The "full and fair opportunity to litigate" element of the issue preclusion doctrine "is rooted in due process concerns." *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo* (*In re Lupo*), 353 B.R. 534, 553 (Bankr. N.D. Ohio 2006) (internal quotation marks and citation omitted). The key to the full and fair opportunity analysis from a due process perspective is determining "whether the party had adequate notice of the issue and was afforded the opportunity to participate in its determination." *Id.* Importantly, under Ohio law, "[i]t is only necessary that the opportunity to fully and fairly litigate the issues be available; it is not required that the party have exercised that opportunity." *Trentadue v. Zimmerman* (*In re Zimmerman*), 2016 WL 929264 at *4 (Bankr. N.D. Ohio Mar. 10, 2016).

Here, due process was not offended because Van Der Westhuizen was afforded the opportunity to litigate. Despite her continued assertions

to the contrary, it is undisputed that Van Der Westhuizen had actual notice of the Ohio trial court action prior to the entry of the default judgment. Her tactical decision to not "participate fully in the proceeding, . . . [does] not prevent the application of preclusion principles in a subsequent action." *State v. Foster* (*In re Foster*), 280 B.R. 193, 206 (Bankr. S.D. Ohio 2002). Furthermore, her lack of success does not equate to a lack of due process or a lack of a full and fair opportunity to litigate. Accordingly, the bankruptcy court did not err in finding this element of Ohio issue preclusion satisfied.

### 2.   Van Der Westhuizen's liability in the Ohio trial court was not actually and directly litigated to the final judgment.

Van Der Westhuizen also argues that the Ohio trial court predicated its finding of liability on the default judgment, not the merits. Therefore, she maintains that her liability was not "actually and directly litigated" as required by the second element of Ohio issue preclusion. Van Der Westhuizen asserts that the Ohio trial court's finding that she was the person who sent the false emails and reviews was based solely on the facts alleged in the amended complaint and presumed liability rather than a trial where she had a full and fair opportunity to litigate liability. We agree.

When assessing Sky's motion for summary judgment, the bankruptcy court could not merely rely on Sky's assertions that the Ohio Findings and Conclusions satisfied all Ohio issue preclusion elements. According to the *Sweeney* framework, before giving preclusive effect to the Ohio Findings and Conclusions, the bankruptcy court first had to determine, based on a

review of the entire trial court record, whether the trial court expressly adjudicated the merits of each claim and the elements thereof based on admissible evidence submitted apart from and in addition to, the pleadings and self-serving testimony. *In re Sweeney*, 276 B.R. at 193-94.

The bankruptcy court did not engage in the full *Sweeney* analysis. Rather, it appears that the bankruptcy court looked solely at whether the Ohio trial court expressly adjudicated the claims. Because the Ohio trial court made detailed findings of fact and conclusions of law, the bankruptcy court concluded that the Ohio Findings and Conclusions was evidence of the Ohio trial court's express adjudication of the claims. The bankruptcy court then presumed that the elements of § 523(a)(6) were actually and directly litigated. This was error because according to *Sweeney*, if it appears that the trial court decided the merits of the claim, then the reviewing court must also determine whether the decision was based on admissible evidence submitted apart from, and in addition to, the pleadings and self-serving testimony.

The bankruptcy court did not make any determination as to whether the Ohio Findings and Conclusions were based on admissible evidence submitted by Sky apart from, and in addition to, her amended complaint and self-serving testimony. Indeed, the bankruptcy court made no findings

22

as to the evidence used by the Ohio trial court as the basis of its findings and conclusions.[8]

To establish that she was entitled to judgment as a matter of law on her § 523(a)(6) claim, Sky had the burden of establishing that the Ohio trial court decided the merits of her claim that Van Der Westhuizen acted willfully and maliciously to cause her harm, thus precluding Van Der Westhuizen from relitigating the same issues. The bankruptcy court did not address Sky's affirmative burden to demonstrate an absence of genuine dispute that the Ohio trial court based its determination that Van Der Westhuizen engaged in willful and malicious conduct by sending the false emails and reviews on facts and evidence presented apart from the amended complaint and Sky's testimony.

In this case, there was no evidence presented that any testimony or evidence at the damages hearing was directed at establishing that it was Van Der Westhuizen who sent the emails and uploaded the reviews. Rather, the Ohio Findings and Conclusions specifically stated that liability was not at issue and that Van Der Westhuizen was already deemed liable for the willful and malicious acts set forth in the amended complaint. Without Sky presenting additional evidence demonstrating that liability was actually and directly litigated, despite the language in the Ohio

---

[8] A review of the transcripts from the damages hearings may have clarified the extent to which liability was litigated, if at all. However, neither party included the transcripts in the record.

Findings and Conclusions, there was no way for the bankruptcy court to accurately determine whether the Ohio trial court's decision regarding Van Der Westhuizen's liability was based on evidence presented at the damages hearing or based merely on her default. *See In re Sweeney*, 276 B.R. at 195 ("Even if a review of the record showed that evidence had been presented from which the court **could** have found negligence, there would be no assurance that it did, for we can never know whether the court awarded damages based on the evidence presented or merely on the defendant's default, as it was entitled to.") (Emphasis in original).

Accordingly, Sky failed to meet her burden of establishing the absence of doubt that Van Der Westhuizen's liability was "actually and directly litigated" as required by Ohio's law on issue preclusion. Because Sky did not establish all four elements, issue preclusion could not be applied to the Ohio Findings and Conclusions. Therefore, the bankruptcy court erred in granting summary judgment on Sky's § 523(a)(6) claim based on issue preclusion.

## CONCLUSION

Based on the foregoing analysis, factual issues remain as to whether Van Der Westhuizen's judgment debt is nondischargeable under § 523(a)(6). We REVERSE AND REMAND to determine Van Der Westhuizen's liability for the tortious acts.


Concurrence begins on next page.

24

LAFFERTY, Bankruptcy Judge, Concurring.

I join in the conclusion reached by my colleagues in this memorandum decision. I write separately to emphasize the importance of clarity and precision in applying the doctrine of issue preclusion and in applying the mechanism of summary judgment, as articulated in Civil Rule 56. And while I also agree with the majority that this matter presented particularly layered, interrelated and subtle questions with respect to these challenging and demanding doctrines, because the bankruptcy court failed to apply with that requisite clarity and precision either the Ohio doctrine of issue preclusion as set forth in that state's case law, or the requirements for entry of summary judgment, I agree that the trial court's judgment must be vacated and the matter remanded.

The doctrine of issue preclusion and the procedural vehicle of summary judgment share one critical characteristic—when the conditions required for their respective applications are met, they each permit entry of final orders or judgments without the need for further proceedings, including trial. Because of their potential to foreclose further proceedings, and effectively end what at least one party might have believed was a fairly contested matter, issue preclusion and summary judgment each have built in requirements for their application that guard against an inappropriate determination that a matter is without genuine dispute.

Stated slightly differently, inherent in the procedural requirements for issue preclusion and summary judgment is the accompanying need for clarity and precision.

Entry of summary judgment demands clarity and precision: the trial court must be certain that there is no genuine dispute concerning *any* material question of fact. That means either that the proponent has demonstrated that the matter or the issue may be disposed of as a matter of law, or that there is no genuine dispute because the proponent has conclusively established the facts relevant to, and that therefore compel the conclusion, and any alleged disputed facts are not material to the determination.

Similarly, issue preclusion also demands clarity and precision: the trial court must be certain that each of the particular factors articulated in the relevant states' formulation of the issue preclusion doctrine have been demonstrated with respect to each element of the claim before that court. In that sense issue preclusion is different from, and more demanding than, claim preclusion, which allows preclusion based on a prior judgment, for what was, *or might have been*, adjudicated at a prior trial. *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1877). The reasons for this distinction are probably obvious, but they are critical to the application of the doctrine of issue preclusion. As the Supreme Court stated,

> Issue preclusion "operates as an estoppel only as to those matters in issue or points controverted, upon the determination

2

of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." *Id.* at 353.

The underlying claim for defamation was tried based on Ohio state law and judgment was entered by an Ohio state court; accordingly, Ohio law of issue preclusion determines whether the doctrine applies in a subsequent proceeding. *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir.1995) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

As the majority clearly sets out, Ohio issue preclusion law requires that for that doctrine to apply, where the Ohio judgment was obtained by default, the party seeking preclusion must demonstrate that the trial court relied on some evidence (or legal argument) *beyond the facts* set forth in the complaint that are "deemed admitted" as a consequence of the default. *Sill v. Sweeney, (In re Sweeney)*, 276 B.R. 186, 193 (6th Cir. BAP 2002) ("the state court, from the evidence submitted, *must actually make findings of fact and conclusions of law* which are sufficiently detailed to support the application of the collateral estoppel doctrine in the subsequent proceeding.") (citation omitted).

3

In light of the need for precision in the application of issue preclusion, it is critical to establish a separate evidentiary basis for each element of the claims alleged in the Complaint, not just some of the elements.

To these points, the Ohio trial court held several days of hearings ostensibly regarding the appropriate amount of damages for the Debtor's defamation of Sky and other tortious conduct. And because of the nature of the claim for defamation, for which the basis and amount of damages *depends* on matters inherent in the elements of the claims (e.g., the nature and subject matter of the defamatory statements, to whom they were communicated, etc.), there was, necessarily, some overlap between the amount of the damages and the "proof" of *some* of the elements of the claims. Accordingly, the Ohio trial court clearly (and necessarily) made findings regarding some of the elements of the claims that went beyond the matters alleged in the Complaint, and, in those instances, may well have satisfied the Ohio requirements for issue preclusion, as to those elements only.

But a proper application of the law of issue preclusion, as articulated by Ohio law, required that there be a demonstration that the trial court had relied on and made findings concerning each element of the claims, apart from the matters deemed admitted by the language of the Complaint.

And notwithstanding all of the evidence adduced at the lengthy post-default hearings concerning the nature of the statements made concerning

Sky, the potential of those statements to injure her reputation and cause her

damages, the audience to whom such statements were made, and the

resulting conclusion that whoever had made the statements had done so in

a cynical and calculating manner that amply demonstrated both

"willfulness" and "malice," there was simply no evidence that the trial

court made findings of fact or relied on evidence apart from the Complaint

with respect to the critical issue who actually sent the offending

messages. The Ohio trial court's extensive findings of fact are simply not

helpful; they do not demonstrate a reliance on any independent evidence

on this crucial point.

The proper application of Ohio issue preclusion law would have

required the moving party to demonstrate that the underlying claims, and

each and every element thereof, were actually and necessarily litigated. In

the case of a judgment obtained even partly by default, a showing is

required that the trial court relied on something beyond the allegations of

the Complaint to establish an element as critical to liability as whether the

defendant actually did the heinous acts complained of—but the Ohio

findings, which were the sole basis on which Sky relied for a determination

of issue preclusion and, in turn, her entitlement to summary judgment, are

devoid of any such clear evidence on this point.

Accordingly, Sky's assertion of issue preclusion fails to satisfy the

rigorous standard imposed by Ohio law and should have been denied on

that legal basis. And, consequently, Sky's request for entry of summary

5

judgment was supported neither by a conclusive legal argument, nor a factual one, in light of the undetermined nature of the critical question who did the offending acts.

The majority was correct in its determination that the bankruptcy court's grant of summary judgment must be vacated, and the matter remanded to that court to determine whether the Debtor was responsible for the defamation that occurred.